1  Ronald H. Bae (SBN 186826)
   rbae@AequitasLegalGroup.com
2  Olivia D. Scharrer (SBN 291470)
   oscharrer@AequitasLegalGroup.com
3  AEQUITAS LEGAL GROUP
   A Professional Law Corporation
4  1156 E. Green Street, Suite 200
   Pasadena, California 91106
5  Telephone:      (213) 674-6080
   Facsimile:      (213) 674-6081
6
7  Attorneys for Plaintiff NAMARAJ KHATRI

8

9

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| NAMARAJ KHATRI, individually, and on behalf of other members of the general public similarly situated, | **Case Number:   3:15-cv-00036-TEH** |
| | [The Honorable Thelton E. Henderson] |
| Plaintiff, | **NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. | |
| INTERCONTINENTAL HOTELS GROUP RESOURCES, INC., a Delaware corporation; IHC OF SAN FRANCISCO, INC., a Delaware corporation; and IHG MANAGEMENT (MARYLAND), LLC, a Maryland limited liability company, | **Hearing Date:   November 21, 2016**<br>**Time:            10:00 a.m.**<br>**Location:        Courtroom 2** |
| | [Filed concurrently with the Declaration of Ronald H. Bae; Declaration of Namaraj Khatri; and Proposed Order] |
| Defendants. | [Complaint filed:   November 26, 2014] |

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on <u>November 21, 2016</u> at <u>10:00 a.m.</u> in <u>Courtroom 2</u> of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff NAMARAJ KHATRI will, and hereby does, move for an order:

      1.      Granting preliminary approval of the proposed class action settlement;

      2.      Certifying the Settlement Class;

      3.      Appointing the Class Representative;

      4.      Appointing the Class Counsel;

      5.      Appointing the Settlement Administrator;

      6.      Approving the form of notice to the Class;

      7.      Setting the hearing date for Motion for Final Approval.

This motion is made on the ground that the settlement is fair, reasonable, and adequate because it is the product of arm's-length, good-faith negotiations after significant litigation, and given the relative strengths and weaknesses of the claims and defenses, as well as the risks involved in pursuing further litigation, the settlement should be approved to resolve the pending dispute.  This motion will be based upon this Notice, the accompanying Memorandum of Points and Authorities, Declaration of Ronald H. Bae, Declarations of Plaintiff Namaraj Khatri, as well as the pleadings and papers on file herein and upon any other matters that may be presented to the Court at the hearing.

Dated:  October 18, 2016                Respectfully Submitted,

                                AEQUITAS LEGAL GROUP

                                /s/  *Ronald H. Bae*

By: _____
                        RONALD H. BAE
                        OLIVIA D. SCHARRER
               Attorneys for Plaintiff NAMARAJ KHATRI

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................ 2

     A.     The Parties and Plaintiff's Allegations ......................................................... 2

     B.     Relevant Procedural History .......................................................................... 2

     C.     Discovery and Investigation .......................................................................... 7

          1.     Pre-Filing Investigation ..................................................................... 7

          2.     Written Discovery .............................................................................. 7

          3.     Deposition ......................................................................................... 10

          4.     Class Member Discovery .................................................................. 10

          5.     Settlement Negotiations .................................................................... 11

III.    SUMMMARY OF SETTLEMENT TERMS ........................................................... 12

     A.     The Settlement Amount ............................................................................... 12

     B.     Eligible Employees ...................................................................................... 12

     C.     The Release .................................................................................................. 13

     D.     Allocation Formula ...................................................................................... 13

     E.     Class Counsel's Fees and Litigation Costs ................................................. 13

     F.     Class Representative Enhancement Award ................................................... 14

     G.     Settlement Administrator ............................................................................. 14

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

     AND THUS WARRANTS PRELIMINARY APPROVAL ...................................... 14

     A.     The Risk, Expense and Likely Duration of Further Litigation Favors

          Preliminary Approval ................................................................................... 15

     B.     The Proposed Settlement is the Product of Adversarial, Informed, Arm's

          Length Negotiations Conducted by Experienced Counsel with the

          Assistance of an Experienced Mediator ...................................................... 16

     C.     The Stage of the Proceedings and the Extent of Discovery Completed................. 17

          Support Preliminary Approval ...................................................................... 17

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-iii-

**NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**2:13-CV-00441-TLN-DB**

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

D.      The Strength of Plaintiff's Case and the Amount Offered in Settlement ................ 17

V.      CONDITIONAL CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT

PURPOSES IS APPROPRIATE ........................................................................ 18

A.      Numerosity ............................................................................................ 18

B.      Commonality ......................................................................................... 18

C.      Typicality .............................................................................................. 19

D.      Adequacy of Class Representative ....................................................... 19

E.      Certification Is Proper Under Rule 23(b)(3) ........................................ 20

        1.      Common Questions Predominate ................................................ 20

        2.      Class Action Is a Superior Mechanism ...................................... 21

VI.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ........... 22

VII.    THE PROPOSED NOTICE TO CLASS AND THE PROPOSED SETTLEMENT

ADMINISTRATION SATISFY DUE PROCESS ........................................... 23

VIII.   PROPOSED IMPLEMENTATION SCHEDULE ........................................... 25

IX.     CONCLUSION ........................................................................................ 26

1

## TABLE OF AUTHORITIES

2

<u>Cases</u>

3  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................... 20, 21

4  *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 776 (1987) ................................. 16

5  *Brown v. Cameron-Brown*, 92 F.R.D. 32 (E.D. Va. 1981) ........................................... 22

6  *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013)..................................... 21

7  *Californians for Disability Rights v. Dept. of Transportation*, 249 F.R.D. 334 (N.D. Cal. 2008) . 18

8  *Churchill Village, LLC v. General Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ................................. 23

9  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)........................................... 18

10  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)...................................................... 23

11  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) .......................................... 19

12  *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................ 15

13  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988)................................... 14, 18, 20, 21

14  *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)........................................ 19

15  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................... 14

16  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)... 21

17  *Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982)........................................ 18

18  *Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014)...................... 15

19  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).................................... 14

20  *Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989) ................................................ 16

21  *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (2005) ...................................... 19

22  *Staton v. Boeing, Co.*, 327 F.3d 938 (9th Cir. 2003).......................................... 19, 20

23  *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011)................................ 15

24  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ........................... 20

25

<u>Rules</u>

26  Fed. R. Civ. P. 23(a)................................................................................ 18, 19

27  Fed. R. Civ. P. 23(b)............................................................................ 20, 21

28  Fed. R. Civ. P. 23(c)............................................................................ 23

-v-

NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

3:15-CV-00036-TEH

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   FED. R. CIV. P. 23(e)...................................................................................................... 23

2   FED. R. CIV. P. 23(g)...................................................................................................... 22

3                                        Other Authorities

4   Conte & Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2006) ......................................... 15

5   Conte & Newberg, Newberg on Class Actions § 3:12 (5th ed. 2013) ........................................... 18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

3:15-CV-00036-TEH

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.      INTRODUCTION**

3          Plaintiff Namaraj Khatri and Defendants InterContinental Hotels Group Resources, Inc.,

4   IHC of San Francisco, Inc., and IHG Management (Maryland), LLC (hereinafter, collectively the

5   "parties") have agreed to settle this wage and hour class action case and hereby seek this Court's

6   preliminary approval of the settlement.  This proposed settlement is presented to this Court after

7   approximately two years of litigation consisting of: pre-filing investigation, extensive discovery,

8   review and analysis of numerous documents/spreadsheets, deposition of Plaintiff, interviews of

9   putative class members, exchange of relevant data and documents between the parties for

10  mediation, a full day of mediation, and post-mediation discussions and negotiations.

11         The proposed settlement - which provides a total settlement amount of $975,000 to

12  approximately 1,495 class members – is an excellent result for the Class.  This proposed

13  settlement satisfies all of the criteria for preliminary settlement approval as its terms are fair,

14  reasonable and adequate for the following reasons.  First, the risk, expense and likely duration of

15  further litigation favors preliminary approval.  This case was settled before Plaintiff moved for

16  certification.  If Plaintiff fails to certify the case, there would be no class recovery, barring a

17  successful appeal.  Moreover, proving liability and damages at trial is fraught with significant

18  risks that also comes with additional burden on the parties and the court system.  Second, the

19  proposed settlement is the result of arm's-length negotiations between competent counsel well-

20  versed in class action jurisprudence.  Further, the case was mediated by a third-party neutral

21  highly experienced in wage and hour class actions.  Third, the parties have completed extensive

22  discovery and also engaged in comprehensive information exchange.  Thus, the stage of this

23  litigation has progressed sufficiently to allow the parties to make an informed decision as to what

24  would constitute a fair, reasonable and adequate settlement.  Lastly, the strength of Plaintiff's case

25  when considered with the amount offered in settlement warrants preliminary approval because

26  Defendants asserted robust arguments and defenses against the donning and doffing claim as well

27  as against the security bag check claim.

28  / / /

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

\\LA - 039936/000005 - 1371944 v2

1    Accordingly, Plaintiff respectfully requests this Court to grant preliminary approval of the

2  proposed settlement, certify the Settlement Class, appoint Plaintiff as the Class Representative,

3  appoint Plaintiff's counsel as Class Counsel, appoint Simpluris as the Settlement Administrator,

4  approve the form of notice to the Class, and set the hearing date for Motion for Final Approval.

5  **II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

6    **A.    The Parties and Plaintiff's Allegations**

7    Defendant INTERCONTINENTAL HOTELS GROUP RESOURCES, INC. is the entity

8  that manages the hotel known as the InterContinental San Francisco.  Defendant IHC OF SAN

9  FRANCISCO, INC. is the entity that manages the InterContinental Mark Hopkins.  Defendant IHG

10  MANAGEMENT (MARYLAND), LLC is the entity that manages the hotel known as

11  InterContinental Los Angeles Century City.  These three entities will be referred to collectively as

12  "Defendants."  Declaration of Ronald H. Bae ("Bae Decl.") ¶ 2.

13    Plaintiff NAMARAJ KHATRI ("Plaintiff") is a former non-exempt employee of

14  Defendant INTERCONTINENTAL HOTELS GROUP RESOURCES, INC.  Plaintiff worked as

15  an hourly-paid server at the Luce Restaurant at the InterContinental San Francisco from

16  approximately December 22, 2012 to approximately September 19, 2013.  Bae Decl. ¶ 3.

17    The operative First Amended Complaint ("FAC") alleges that Defendants failed to pay

18  employees for time spent changing into and out of uniforms at the hotels and undergoing security

19  bag checks.  The FAC includes a claim for waiting time penalties and a claim for failure to provide

20  legally compliant wage statements, both of which are derivative of the claim for unpaid wages.  The

21  FAC defines the putative class as all non-exempt, hourly paid employees who worked at the

22  InterContinental San Francisco, InterContinental Mark Hopkins, or InterContinental Los Angeles

23  Century City at any time between November 26, 2010 and the date of preliminary approval, who

24  were required to wear uniforms and undergo security bag checks.  Bae Decl. ¶ 4.

25    **B.    Relevant Procedural History**

26    Plaintiff filed this case in San Francisco Superior Court on November 26, 2014.  The

27  complaint alleged the following causes of action against Defendant INTERCONTINENTAL

28  HOTELS GROUP RESOURCES, INC.: (1) failure to pay overtime wages under California Labor

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-2-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   Code §§ 510, 1194, and 1198; (2) failure to provide compliant rest breaks under California Labor

2   Code § 226.7; (3) failure to pay waiting time penalties under California Labor Code §§ 201 – 203;

3   and (4) unfair competition under California Business & Professions Code § 17200, *et seq*.  The

4   claim for unpaid overtime wages was based on three theories.  First, Plaintiff alleged that

5   employees were owed wages for time spent changing into and out of uniform at the hotel.  Second,

6   and relatedly, Plaintiff alleged that employees were owed wages for time spent undergoing security

7   bag checks.  Finally, Plaintiff alleged that the value of free meals given to employees should have

8   been factored into their overtime rate.  The rest break claim alleged that employees did not receive

9   compliant rest breaks due to a rest break policy that did not give effect to the "major fraction"

10  requirement under California law.  The putative class was defined as all current and former non-

11  exempt employees who worked for Defendant in California at any time between November 26,

12  2010 and the date of class certification.  Bae Decl. ¶ 5.

13          Defendant filed its answer to the complaint on January 2, 2015 and removed this case to the

14  Northern District of California on January 5, 2015.  Bae Decl. ¶ 6.

15          The initial case management conference took place on April 6, 2015 and discovery began

16  the following day.  A significant portion of Plaintiff's discovery efforts focused on determining the

17  appropriate scope of the class.  Plaintiff's complaint defined the class as all non-exempt California

18  employees who worked for Defendant between November 26, 2010 and the date of class

19  certification.  Soon after the complaint was filed, Defendant informed Plaintiff that the class

20  definition, as written, would encompass all of the non-exempt employees of 33 hotels managed by

21  Defendant during the relevant time period.  The original class definition also arguably could be

22  interpreted to include employees of the hundreds of California hotels franchised under the

23  InterContinental Hotels Group (aka "IHG") trade names during the relevant time period.  Defendant

24  vigorously contended that the class definition was overbroad and improper insofar as (1) IHG did

25  not own, operate or manage the franchised hotels, (2) the franchised hotels were independently

26  operated and managed by different franchisees, (3) there were many differences in working

27  conditions and employer identity among the managed hotels and franchised hotels, (4) employees at

28  many of the hotels did not change into their uniforms at the hotels or undergo security bag checks

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   and (5) there were other important factual and policy differences among the managed hotels.  Bae

2   Decl. ¶ 7.

3          Defendant suggested that the class should be limited to non-exempt employees of the

4   InterContinental San Francisco hotel, where Plaintiff worked.  Plaintiff did not agree to do so

5   because there was not enough information for Plaintiff to evaluate whether and to what extent the

6   class definition should be narrowed.  Plaintiff immediately began investigating this issue.  Between

7   May 2015 and May 2016, Plaintiff gathered information and documents to determine how to

8   appropriately define the class.  The information and documents obtained by Plaintiff also pertained

9   to class certification and merits issues and led to two causes of action being withdrawn, as

10  discussed herein.  In July 2015, Defendant provided two declarations in response to Plaintiff's

11  discovery requests.  These declarations played a key role in helping Plaintiff narrow the class

12  definition.  Bae Decl. ¶¶ 8 – 10.

13         One declaration was from Jenny Tidwell, Vice President of Franchise Licensing and

14  Compliance for Holiday Hospitality Franchising LLC, the entity that franchises hotels under the

15  IHG trade name.  Ms. Tidwell's declaration provided detailed information about the franchised

16  hotels that enabled Plaintiff to exclude these hotels from the class definition.  Among other things,

17  Ms. Tidwell indicated that Defendant did not have any business relationship of any kind with the

18  franchised hotels and did not exercise any control over the employment relationships (or the terms

19  and conditions of employment) between the licensees and the employees of the franchised hotels.

20  Ms. Tidwell's declaration provided detailed facts to support these assertions.  Her declaration also

21  indicated that Plaintiff worked for a managed hotel, not a franchised one.  Based on this declaration,

22  Plaintiff agreed to exclude the franchised hotels from the class definition in July 2015.  Bae Decl. ¶

23  11.

24         The second declaration that Defendant provided was from David Schweitzer, Defendant's

25  Director of Employee and Labor Relations.  Mr. Schweitzer's declaration identified the 33

26  California hotels managed by Defendant and provided information about the relevant employment

27  policies and practices at these hotels.  Mr. Schweitzer's declaration indicated the following, among

28  other things: The 33 managed hotels included hotels from 7 different brands, including

-4-

1   InterContinental, Crowne Plaza, and Holiday Inn.  Several brands, which were identified in the

2   declaration, did not require employees to wear uniforms other than logoed shirts.  Only the 3

3   InterContinental hotels required employees to undergo regular security bag checks when exiting the

4   hotel, and the other hotels did not perform bag checks at all or performed them on a random, very

5   occasional basis.  Eleven hotels offered free or reduced-cost meals to non-exempt employees.

6   These hotels included the 3 InterContinental hotels, 3 Crowne Plaza hotels, and 5 Holiday Inn

7   hotels.  Based on Mr. Schweitzer's declaration, Plaintiff agreed to exclude from the putative class

8   the hotels that did not require employees to wear formal uniforms and did not perform security bag

9   checks or offer free or reduced-cost meals.  Bae Decl. ¶ 12.

10          By around the end of July 2015, the class definition had been narrowed to 11 managed

11  hotels.  The donning and doffing and security bag check subclass included the InterContinental San

12  Francisco, InterContinental Mark Hopkins, and the InterContinental Los Angeles Century City

13  hotels.  The regular rate miscalculation subclass included the 3 InterContinental hotels plus the 3

14  Crowne Plaza and 5 Holiday Inn hotels that offered employees free or reduced-cost meals.  The rest

15  break claim was still being investigated.  Bae Decl. ¶ 13.

16          The rest break claim was based on the theory that Defendant's rest break policy at the hotel

17  where Plaintiff worked only provided for one rest break per 4 hours of work and did not provide for

18  the required number of rest breaks when employees worked a "major fraction" of 4 hours.  This

19  policy was contained in the employee handbook that Plaintiff received when he began working for

20  Defendant.  However, Defendant maintained that it had facially compliant rest break policies in

21  effect during the relevant time period and that these policies were put into practice at the managed

22  hotels.  In July 2015, Defendant produced documents in response to Plaintiff's discovery requests

23  that included copies of two InterContinental hotel rest break policies that Plaintiff had not seen

24  before.  These policies provided for the required number of rest breaks when employees worked a

25  major fraction of 4 hours.  Defendant asked Plaintiff to withdraw the rest break claim in light of

26  these policies and its rest break practices in general, but Plaintiff investigated further before

27  agreeing to do so.  Plaintiff explored alternative legal theories, such as the possibility of certifying

28  the rest break claim on the basis that the policies did not explicitly reference the payment of rest

**A E Q U I T A S   L E G A L   G R O U P**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**NOTICE OF UNOPPOSED MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  break premiums when required, based on the recent ruling in *Safeway, Inc. v. Superior Court*, 238

2  Cal. App. 4th 1138 (2015).  Plaintiff also interviewed class members after receiving their contact

3  information in late December 2015.  The class members interviewed by Plaintiff reported that they

4  were able to take required rest breaks and could also request and receive premium pay when they

5  missed rest breaks.  Around the end of May 2016, Plaintiff agreed to withdraw the rest break claim.

6  Bae Decl. ¶ 14.

7        The other claim that Plaintiff ultimately withdrew was the regular rate miscalculation claim.

8  This claim was based on the theory that employees regularly received free meals and worked

9  overtime without the value of the free meals being factored into the overtime rate.  Plaintiff

10  investigated this claim for many months and discovered significant obstacles to pursuing the claim.

11  First, many class members were union members who worked under collective bargaining

12  agreements and were therefore exempt from the traditional overtime requirements, pursuant to

13  Labor Code Section 514.  Second, many class members worked in food and beverage positions.

14  Under the federal laws and regulations the Court would have referred to in analyzing this claim,

15  Defendant was specifically exempted from having to include the value of free meals in these

16  employees' overtime rate.  Further, the vast majority of employees were either union members or

17  food and beverage employees or both.  There were very few non-exempt employees who were both

18  non-union and non-food and beverage employees.  The numbers varied some among hotels, but

19  overall there were only about 5 employees per hotel (at 11 hotels) who could have been included in

20  this subclass.  Third, there was some evidence supporting the defense that the free meals were

21  provided for "the convenience of" the hotels.  If Defendant could prove this, the regular rate claim

22  would also have been barred under the federal regulations.  Finally, Plaintiff was a union member

23  and could not have represented this subclass.  Plaintiff did consider adding a second class

24  representative, but for all of the reasons described above, he ultimately agreed to withdraw the

25  regular rate miscalculation claim.  Bae Decl. ¶ 15.

26        By July 2016, when the parties went to mediation, the class claims had essentially been

27  narrowed to the donning and doffing and security bag check claims at the 3 InterContinental hotels,

28  plus the derivative claims for waiting time penalties and non-compliant wage statements.  The rest

-6-

1   break claim had been withdrawn.  The regular rate miscalculation claim had not yet been

2   withdrawn, but Plaintiff's mediation preparations brought the numerosity issue and other issues to

3   light and Plaintiff agreed to withdraw the claim shortly after mediation based on the conclusion that

4   it was subject to several viable defenses.  At the time of mediation, Plaintiff had spent more than a

5   year and a half thoroughly investigating all of the claims, as described above and in the next section

6   regarding discovery.  Bae Decl. ¶ 16.

7          On September 8, 2016, the parties stipulated to allow Plaintiff to amend the complaint to

8   reflect the narrowed claims and class definition that resulted from Plaintiff's discovery and

9   investigation, and to add the owners of the 3 hotels in question as defendants.  The stipulation was

10  approved, and Plaintiff filed the FAC on September 15, 2016.  Throughout the duration of this case,

11  Plaintiff engaged in extensive discussions and negotiations, which enabled Plaintiff to thoroughly

12  investigate the claims while requiring minimal Court involvement.  Bae Decl. ¶¶ 17 - 18.

13         **C.      Discovery and Investigation**

14         Over the course of the last two years, Plaintiff's counsel expended extensive time and

15  resources conducting investigation and discovery regarding the class claims, as follows:

16                **1.      Pre-Filing Investigation**

17         Plaintiff's counsel made a request for Plaintiff's employment records from Defendant

18  pursuant to California Labor Code §§ 226(b), 432 and 1198.5.  Plaintiff's counsel received two

19  sets of responsive documents.  The documents received pursuant to these requests consisted of

20  Plaintiff's payroll data and personnel file.  Plaintiff's counsel also obtained copies of the

21  employment records that Plaintiff had in his possession, which included wage statements, a copy

22  of the employee handbook for the InterContinental San Francisco, and other employment records,

23  including dress code policies.  Plaintiff's counsel also made a Public Records Act request to the

24  Division of Labor Standards Enforcement, seeking documents relating to wage-and-hour claims

25  against InterContinental Hotels.  Plaintiff's counsel reviewed and analyzed all of the documents

26  described above prior to filing the complaint.  Bae Decl. ¶¶ 20-23.

27                **2.      Written Discovery**

28         Pre-certification discovery began on April 7, 2015, when the parties exchanged initial

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

disclosures.  Plaintiff's initial disclosures included 241 pages of relevant and potentially relevant documents, including all of Plaintiff's employment records in his possession at the time.  Bae Decl. ¶ 24.

On May 1, 2015, Plaintiff propounded Interrogatories (Set 1), seeking the names and contact information of the putative class members.  The Interrogatories defined the putative class as all of Defendant's non-exempt California employees during the relevant time period.  Defendant vigorously contended that this definition was overbroad, for the reasons described above.  Defendant also insisted on sending a Belaire-West privacy notice before releasing employees' contact information.  Plaintiff spent approximately 3 months investigating and conducting discovery to narrow the class definition for purposes of the Belaire-West notice (while reserving the right to define the class more broadly for other purposes if warranted).  As explained above, Plaintiff obtained documents and declarations from Defendant to be able to determine how to define the class.  Between May and August 2015, Plaintiff carefully analyzed the documents and declarations provided by Defendant, obtained additional information and documents as needed, and conducted legal research.  By August 2015, Plaintiff was able to narrow the class definition enough that the parties could begin negotiating the language of the Belaire-West notice and the sampling of putative class members it would be sent to.  On November 24, 2015, a Belaire-West notice was sent to a random sample of uniformed employees at the InterContinental San Francisco and three other hotels covering each of the brands included in the class definition at the time.  On December 23, 2015, Plaintiff received the names and contact information of approximately 440 employees.  Bae Decl. ¶ 25.

Also on May 1, 2015, Plaintiff propounded Requests for Production of Documents (Sets 1 through 4) on Defendant.  These requests sought Plaintiff's complete time records, payroll records, personnel file, and other employment records; policy documents relating to the claims in the original complaint; the putative class members' time records, payroll records, and other employment records; and documents relating to the affirmative defenses alleged in Defendant's answer to the original complaint.  Bae Decl. ¶ 26.

/ / /

**A E Q U I T A S   L E G A L   G R O U P**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1    On June 25, 2015, Defendant provided verified substantive responses to Requests for

2    Production of Documents (Set 1).  On June 26, 2015, Defendant provided verified substantive

3    responses to Requests for Production of Documents (Set 2).  Defendant produced about 350 pages

4    of documents responsive to these requests, including policy documents relating to the donning and

5    doffing, security bag check, regular rate miscalculation, and rest break claims; the collective

6    bargaining agreement applicable to Plaintiff during his employment; an indoor map of the

7    InterContinental San Francisco; and Plaintiff's time records, payroll records, schedules, and

8    personnel file.  Bae Decl. ¶ 27.

9    On July 8, 2015, Defendant produced the declaration of David Schweitzer, Defendant's

10   Director of Employee and Labor Relations in response to certain requests in Plaintiff's Requests

11   for Production of Documents (Set 3).  As described above, Mr. Schweitzer's declaration provided

12   detailed information about how the policies and practices alleged in the complaint applied to the

13   managed hotels.  On July 13, 2015, Defendant produced the declaration of Jenny Tidwell in

14   response to certain requests in Plaintiff's Requests for Production of Documents (Set 3).  As

15   described above, Ms. Tidwell provided detailed information regarding the franchised hotels.  Bae

16   Decl. ¶¶ 28 - 29.

17   On March 17, 2016, Defendant provided verified substantive responses to Requests for

18   Production of Documents (Set 3).  Defendant produced several hundred pages of responsive

19   documents, including relevant portions of the collective bargaining agreements applicable to the

20   unionized hotels; documents relating to the donning and doffing claim; and an agreed-upon

21   sampling of class members' schedules.   Bae Decl. ¶ 30.

22   During the parties' extensive discussions about discovery, the parties agreed that

23   Defendant could postpone responding to Requests for Production of Documents (Set 4) until

24   further notice.  This set of requests sought documents relating to Defendant's affirmative defenses.

25   The agreement to postpone responses was still in effect at the time the case settled.  The

26   documents and information that Plaintiff did receive, as described in the accompanying

27   declaration, did relate to Defendant's defenses and enabled Plaintiff to fully evaluate the defenses.

28   Bae Decl. ¶ 31.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1    Pursuant to the parties' agreement, Defendant produced a large amount of data pertaining

2 to the putative class members for mediation.  Between June 6 and 15, 2016, Defendant produced

3 seven Excel spreadsheets containing hundreds of thousands of lines of class members' time and

4 payroll data.  This data pertained to all of the non-exempt employees who worked at the 3

5 InterContinental hotels between November 2010 and April 2016 (the donning and doffing and

6 security bag check subclasses).  The spreadsheets also contained data pertaining to all or nearly all

7 of the employees who would have been part of the regular rate miscalculation subclass, which was

8 for purposes of the parties' negotiations, defined as the non-union, non-food and beverage

9 employees of 11 specified hotels.  Defendant also provided a document identifying the uniformed

10 positions at each of the 3 InterContinental hotels to assist Plaintiff in interpreting the data.

11 Plaintiff analyzed this data thoroughly in preparation for mediation.  Bae Decl. ¶ 32.

12    In addition to conducting the discovery described above, Plaintiff responded to discovery

13 requests from Defendant.  On August 26, 2015, Defendant propounded Requests for Production of

14 Documents (Set 1) on Plaintiff, seeking documents relating to all aspects of the claims in the

15 original complaint.  On October 13, 2015, Plaintiff provided verified substantive responses,

16 including approximately 40 pages of documents that Plaintiff had not previously produced.  Bae

17 Decl. ¶ 33.

18    **3.    Deposition**

19    Defendant took Plaintiff's deposition on June 28, 2016.  Plaintiff's deposition lasted

20 approximately 6 hours.  Bae Decl. ¶ 34.

21    **4.    Class Member Discovery**

22    On January 18, 2016, Plaintiff mailed a pre-certification notice to the approximately 440

23 class members whose contact information had been provided.  The notice provided information

24 about the claims in this case and invited class members to contact Plaintiff's counsel to provide

25 relevant information about their work experience.  Plaintiff interviewed many class members, who

26 provided detailed information that assisted Plaintiff in evaluating the claims in this case.  For

27 example, class members provided information about how long it took to change into and out of

28 uniform and whether they were provided with compliant rest breaks or premium compensation in

1 | lieu thereof.  Bae Decl. ¶¶ 35 - 36.

2 | **5.      Settlement Negotiations**

3 | All of Plaintiff's pre-filing investigation, discovery during litigation, and pre-mediation

4 | investigation enabled Plaintiff to fairly estimate Defendant's exposure and the probability of

5 | prevailing on each claim at class certification and trial.  Plaintiff was thus able to enter settlement

6 | negotiations armed with the information required to settle this matter for a fair and reasonable

7 | amount, having thoroughly assessed the risks and prepared an estimated class-wide damages

8 | model.

9 | On July 14, 2016, the parties participated in a mediation with Mr. Jeffrey Ross, a well-

10 | respected mediator who is very knowledgeable and experienced in wage-and-hour class actions.

11 | The mediation lasted all day, but the parties could not reach a settlement.  For the next two and a

12 | half weeks, the parties continued their settlement discussions with the help of the mediator.  On or

13 | around August 3, 2016, the parties were able to reach a tentative settlement for a total settlement

14 | amount of $975,000.  Bae Decl. ¶ 38.

15 | Thereafter, the parties negotiated the terms of the Memorandum of Understanding, Joint

16 | Stipulation of Class Action Settlement ("Joint Stipulation"), and the notice packet.  These

17 | negotiations lasted about 5 weeks and the parties encountered numerous difficulties in reaching

18 | agreement as to the terms of the settlement and the language of the notice packet.  Nevertheless,

19 | the parties worked together as best they could to finalize the settlement terms, which are

20 | memorialized in the Joint Stipulation.  A true and correct copy of the Joint Stipulation is attached

21 | as Exhibit A to Declaration of Ronald H. Bae.  The notice packet, which consists of a Notice of

22 | Class Action Settlement and an Opt-Out Form, is attached to the Joint Stipulation.  Bae Decl. ¶ 39.

23 | The negotiations were conducted at more than arm's length and the resulting settlement

24 | was the outcome of an informed and educated analysis regarding class certification, liability and

25 | damages issues, and the total exposure in relation to the costs and risks to Plaintiff and the class

26 | members.  This settlement was accomplished after significant investigation and discovery, with

27 | Plaintiff having invested in significant factual and legal research, engaged in numerous

28 | discussions and exchanges of correspondence with defense counsel, reviewed and analyzed time

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-11-

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

and payroll records and other relevant documents and data, and conducted extensive negotiations at the mediation and thereafter.  The settlement was well-reasoned and was reached after Plaintiff thoroughly assessed the risks presented by the facts of the case and the current applicable law.  These factors support a finding that the settlement is fair and reasonable.  Bae Decl. ¶¶ 40-41.

## III.   SUMMMARY OF SETTLEMENT TERMS

### A.   The Settlement Amount

The Joint Stipulation of Class Action Settlement provides that Defendants will pay a Total Settlement Amount of Nine Hundred Seventy Five Thousand Dollars ($975,000) to settle all claims against Defendants.  **Ex. A** to Bae Decl.; Joint Stip. § D.2.  The Total Settlement Amount paid by Defendants pursuant to this Agreement will settle all pending issues between the settling parties, including but not limited to class member payments, Class Counsel's attorneys' fees and costs, the settlement administrator fees, enhancement payments to the class representative, and employee-side payroll taxes.  Defendants will pay their share of applicable employer-side payroll taxes on the wages portion of the class member settlement payments separately, outside of this settlement.  *Id.*

This is a non-reversionary settlement.  The parties agree that no part of the Total Settlement Amount will revert back to Defendants.  Class Participants shall have 90 calendar days to deposit or otherwise cash their settlement checks.  As to the funds that remain in the Settlement Fund Account after 90 days due to Class Participants' failure to deposit or cash their settlement checks, those funds will be distributed as follows:  50% to Legal Aid Society – Employment Law Center (San Francisco) and 50% to Counsel for Justice Veterans Legal Services Project.  Joint Stip. § D.6.

### B.   Eligible Employees

The settlement class consists of all non-exempt, hourly paid employees who worked for any of the Defendants at the InterContinental San Francisco, InterContinental Mark Hopkins, or InterContinental Los Angeles Century City hotels at any time between November 26, 2010 and the date of preliminary approval, and who were required to wear uniforms and undergo security bag checks.  Joint Stip. § D.1.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

**C.      The Release**

The Joint Stipulation provides that upon final approval of the settlement, the class representative and each class member who has not opted out of this settlement in a timely manner, shall release and discharge Defendants, and any of their former and present parents, subsidiaries, predecessors, or affiliates, and their officers, directors, employees, partners, shareholders, attorneys, and agents, and any other successors, assigns, or legal representatives, from any and all claims that were asserted in the First Amended Complaint, or which could have been asserted based on the facts alleged in the First Amended Complaint, including without limitation to, any and all claims for alleged unpaid wages, itemized wage statement penalties, or waiting time penalties under the California Labor Code or Business & Professions Code (including § 17200 *et seq.*); claims for restitution and other equitable relief, liquidated damages, punitive damages, or penalties; and any other benefit claimed on account of the allegations asserted or that could have been asserted in the First Amended Complaint.  The Class Representative shall give a general release with a waiver of Civil Code § 1542.  Joint Stip. § D.9.

**D.      Allocation Formula**

Class members will be paid pursuant to an allocation formula based on the number of workweeks for which they worked during the class period.  Each Class member's individual settlement payment will be based on a ratio of the class member's individual workweeks to the total workweeks.  The individual settlement payment will be calculated by dividing the total workweeks for the class into the net settlement amount to determine the weekly payment amount, and then multiplying the weekly payment amount by each class member's total workweeks.  For the extra banquet employees, who work sporadically, the workweeks calculation will consider 5 shifts to be a workweek.  Joint Stip. § D.5.

**E.      Class Counsel's Fees and Litigation Costs**

Plaintiff's counsel will apply for twenty-eight percent of the Total Settlement Amount as attorneys' fees which Defendants do not oppose.  Additionally, Plaintiff's counsel will seek reimbursement for their actual litigation costs and expenses from the Total Settlement Amount, not to exceed $20,000.  Joint Stip. § D.4.  The Court need not decide the attorneys' fees and costs

-13-

issue now.  Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiff's counsel will file a Motion for Award of Class Representative Incentive Award, Settlement Administrator's Expenses and Attorneys' Fees and Costs to be heard at the time of the hearing for the Motion for Final Approval of the Class Action Settlement.

### F.    Class Representative Enhancement Award

In addition to his pro rata share of the settlement funds, Plaintiff will apply for a class representative enhancement award in recognition of the services he rendered on behalf of the class.  Plaintiff will move for Court approval of such award in the amount of $10,000 in conjunction with his request for final approval of the proposed class action settlement.

### G.    Settlement Administrator

The parties agreed to use Simpluris as the settlement administrator.  Joint Stip. § C.3. Simpluris is an experienced and well-known class action settlement administrator that Plaintiff's counsel have worked with in numerous other class action settlements.  The settlement administrator's fees will be paid from the total settlement amount.  *Id.*

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND THUS WARRANTS PRELIMINARY APPROVAL

In evaluating proposed class action settlements, the Ninth Circuit teaches that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Furthermore, courts must give "proper deference" to settlement agreements because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988), citing *Officers for Justice v. Civil Serv. Comm'n*.  At the preliminary approval stage, district courts need only determine that the settlement is non-collusive and within the range of possible final approval.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   80 (N.D. Cal. 2007); *see also* Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions, §

2   11.41 (4th ed. 2006).

3       **A.      The Risk, Expense and Likely Duration of Further Litigation Favors**

4               **Preliminary Approval**

5           When the claims at issue are heavily contested, there is an inherent risk in continuing

6   litigation.  In *Thieriot v. Celtic Ins. Co.,* 2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011), the

7   district court approved a settlement agreement in which the defendant specifically denied liability,

8   noting that such denial of liability posed a risk to continued litigation.  *See also Mora v. Harley-*

9   *Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to

10  settlement agreement where defendant denied any liability).  Further, the court acknowledged that

11  "even with a strong case, litigation entails expense."  *See Greko v. Diesel U.S.A., Inc.*, 2013 WL

12  1789602 at *4 (N.D. Cal. Apr. 26, 2013).

13          In the instant case, Defendants vehemently denied liability.  At the outset of the litigation,

14  Defendants immediately attacked the class definition as being overbroad.  In addition, Defendants

15  argued that there was no policy at any of the hotels requiring employees to change at work, and

16  that employees could and did change into all or part of their uniforms at home, which rendered the

17  changing time non-compensable.  Defendants gathered declarations from employees who

18  confirmed they routinely changed into and out of their uniforms at home.  Defendants also

19  contended that the time spent changing into and out of uniform was *de minimis* because most

20  employees spent no more than 2 to 5 minutes changing into uniform and even less time changing

21  out.  Defendants also contended that many employees were paid for their donning and doffing

22  time because of Defendants' policy of rounding employees' time in either direction to the nearest

23  7 minutes.  According to Defendants, employees often clocked out up to 7 minutes early, had their

24  time rounded to the end of time of their shift, changed during the "rounded time", and thus were

25  paid for any donning and doffing time at the end of the shift.  Defendants also maintained that

26  some employees who changed at the hotels commonly clocked in before changing into uniform, or

27  clocked out after changing into their street clothes, despite the policy forbidding this practice.  Bae

28  Decl. ¶ 45.  Finally, Defendants argued that the litigation of these defenses would create many

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-15-

1   individualized issues that would bar class certification of these claims.

2        At the time of settlement, Plaintiff has not yet certified the case, so the risk and expense of

3   getting the case successfully certified posed a great risk to the Class because if Plaintiff failed in

4   that endeavor, the Class would receive no recovery, barring a successful appeal.  Even if the case

5   was certified, Plaintiff still faces numerous roadblocks before achieving the desired result for the

6   Class.  After certification, Plaintiff's next course of action would be to prepare and take the case to

7   trial on a classwide basis.  Trying a class action case to verdict is of course fraught with

8   uncertainties, particularly involving the use of statistical sampling, not to mention the expense of

9   identifying and transporting fact witnesses to testify at trial.  Even assuming that a favorable trial

10  verdict could be obtained, that verdict would have to withstand appeal that will takes years to

11  resolve.  The possibility that Plaintiff could have achieved a better result if the case was tried to

12  verdict should be viewed with the above risks in mind.  *See Priddy v. Edelman*, 883 F.2d 438, 447

13  (6th Cir. 1989) ("The fact that a plaintiff might have received more if the case had been fully

14  litigated is no reason not to approve the settlement.").

15       **B.    The Proposed Settlement is the Product of Adversarial, Informed, Arm's**

16              **Length Negotiations Conducted by Experienced Counsel with the Assistance of**

17              **an Experienced Mediator**

18       Arm's-length negotiations conducted by competent counsel constitute prima facie evidence

19  of fair settlements.  *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 776, 822 (1987) ("where

20  . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length

21  negotiation, conducted by capable counsel, it is presumptively fair").  The proposed settlement is

22  the result of intensive, arm's-length negotiations between experienced attorneys who are well-

23  versed with class action litigation and with the legal and factual issues of this case in particular.  A

24  full day of mediation was held under the guidance of experienced class action mediator, Jeffrey

25  Ross.  Even after a full day of mediation, however, the parties were unable to finalize the

26  settlement terms as there were number of complicated issues.  For the next two and a half weeks,

27  the parties continued their settlement discussions with the help of the mediator.  Then and only

28  then the parties were able to reach a tentative settlement for a total settlement amount of $975,000.

A E Q U I T A S   L E G A L   G R O U P
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-16-

1  Bae Decl. ¶ 38.  Accordingly, preliminary approval of the proposed settlement is warranted, and

2  the settlement should be presented to the Class Members for their consideration.

3      **C.      The Stage of the Proceedings and the Extent of Discovery Completed**

4              **Support Preliminary Approval**

5      The parties have been engrossed in extensive discovery for over a year and also have

6  engaged in comprehensive information exchange to supplement any information gap.  As

7  discussed in Section II.C., *supra*, Plaintiff promptly propounded extensive discovery requests and

8  promptly exercised initiative to meet and confer, where necessary.  Bae Decl. ¶¶ 25 - 33.  Plaintiff

9  obtained the putative class list, and then proceeded to interview putative class members, who

10 provided detailed information that assisted Plaintiff in evaluating the claims in this case.  Bae

11 Decl. ¶¶ 35 - 36.  As part of its investigation and discovery, Plaintiff's counsel reviewed and

12 analyzed numerous documents and large spreadsheets (containing class members' time and

13 payroll data) produced by Defendants.  Bae Decl. ¶¶ 27 - 32.  In addition, Defendants took

14 Plaintiff's deposition which helped the parties obtain additional facts and evaluate the viability of

15 certain defenses.  Bae Decl. ¶ 34.  In sum, these events indicate that the stage of the proceeding of

16 this case had sufficiently progressed to a point where the parties had sufficient information to

17 make an informed decision about whether to settle the matter and for how much.

18      **D.      The Strength of Plaintiff's Case and the Amount Offered in Settlement**

19     Defendants have agreed to pay a maximum settlement amount of $975,000.  As discussed

20 in ¶¶ 43 – 52 of the Bae Declaration, Defendants were going to vigorously contest certification

21 and liability with numerous defenses.  It is difficult to precisely extrapolate or estimate

22 Defendants' total exposure, assuming that Plaintiff and the Class prevail at certification and trial.

23 However, based on Plaintiff's investigation as well as evidence provided by Defendants, and

24 taking into account appropriate discounts for the relative strength of each claim, Plaintiff's counsel

25 has estimated Defendants' total potential exposure is estimated to be approximately $3,016,600.

26 *See* Bae Decl. ¶¶ 42 - 53.  Thus, this $975,000 settlement represents a recovery of approximately

27 32.3% of total exposure, which is an excellent result when considering the costs and risks

28 attendant to Plaintiff and the Class.

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-17-

**V.    CONDITIONAL CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE**

**A.    Numerosity**

Rule 23(a)(1) requires that "the class [be] numerous that joinder of all members is impracticable."  The parties agree that there are approximately 1,495 current and former employees who fall within the class definition.  Thus, the numerosity requirement is easily met. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983) (as few as 39 class members sufficient for numerosity); Conte & Newberg, Newberg on Class Actions (5th ed. 2013), § 3:12 ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

**B.    Commonality**

The Ninth Circuit views the commonality preconditions under Rule 23(a)(2) as "less rigorous" than the companion requirements in Rule 23(b)(3), and in fact, construes it "permissively" and deems the requirement "minimal."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998); *Californians for Disability Rights v. Dept. of Transportation*, 249 F.R.D. 334, 346 (N.D. Cal. 2008), citing *Dukes v. Wal-mart, Inc.*, 509 F.3d 1168, 1177 ("The existence of even one significant issue common to the class is sufficient to warrant certification.")

In this case, Plaintiff believed the following common factual and legal questions were present:

- Does Defendants' alleged failure to compensate its employees for the time spent on putting on and taking off uniforms at work violate California Labor Code §§ 510, 1194 and 1198?

- Does Defendants' policy of not compensating its employees for the time they undergo security bag checks violate California law?

- Do Defendants' wage statements violate California Labor Code § 226?

- Does Defendants' alleged failure to pay timely all wages due at the time of termination violate California Labor Code §§ 201 - 203?

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-18-

1    Plaintiff asserts that the above questions hinge on the interpretation (and lawfulness

2 thereof) of Defendants' policies and practices.  As such, Plaintiff contends that common factual

3 and legal questions are present.   Accordingly, commonality under Rule 23(a)(2) is met for

4 settlement purposes.

5    **C.    Typicality**

6    The Ninth Circuit explained that "[u]nder the rule's permissive standards, representative

7 claims are 'typical' if they are reasonably coextensive with those of absent class members; they

8 need not be substantially identical." *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003),

9 citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).  It is sufficient that the class

10 representative is "part of the class and possess[es] the same interest and suffer[s] the same injury

11 as the class members."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

12 Put in another way, the test of typicality is "whether other members have the same or similar

13 injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

14 whether other class members have been injured by the same course of conduct.'" *Hanon v.*

15 *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  In determining whether typicality is met,

16 the "focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury

17 caused to the plaintiff."  *Simpson v. Fireman's Fund Ins. Co*., 231 F.R.D. 391, 396 (2005).

18    Here, Plaintiff alleges that he was subjected to the same wage and hour policies as the

19 other class members, and that Defendants' wage and hour policies at issue applied to all

20 nonexempt, hourly paid employees at these three hotels.  As such, Plaintiff alleges he and others

21 have been injured by the same policies and practices and seek the same remedy.  Thus, Plaintiff's

22 claims are typical of the entire class for settlement purposes.

23    **D.    Adequacy of Class Representative**

24    Rule 23(a)(4) requires that the "representative parties [] fairly and adequately protect the

25 interests of the class." FED. R. CIV. P. 23(a)(4).  Adequacy of representation is established where

26 the plaintiff's interests are not antagonistic to those of the class and the plaintiff is represented by

27 competent counsel. *See Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003).  Plaintiff's

28 interest in this litigation is co-extensive with the interests of the class.  Plaintiff and the class

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

-19-

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   members have been allegedly injured in the same manner by Defendants and seek the same relief.

2   In addition, Plaintiff has devoted considerable time to this litigation, including initiating the case

3   by searching for a lawyer, consulting with his counsel to aid in the investigation, responding to

4   written discovery, gathering documents responsive to discovery requests and traveling at his own

5   expense to testify at his deposition.  Moreover, Plaintiff is prepared to continue performing these

6   and other tasks, which demonstrates his commitment to achieving the best possible results for the

7   class.  *See* Declaration of Namaraj Khatri.  Accordingly, Plaintiff is an adequate class

8   representative for settlement purposes.

9        **E.**    **Certification Is Proper Under Rule 23(b)(3)**

10         **1.**    **Common Questions Predominate**

11       Rule 23(b)(3) requires that common questions of law or fact not only be present, but also

12   that they "predominate over any questions affecting only individual members, and that a class

13   action is superior to other available methods for fairly and efficiently adjudicating the

14   controversy."  FED. R. CIV. P. 23(b)(3).  This inquiry examines "whether proposed classes are

15   sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*,

16   521 U.S. 591, 594 (1997).  "When common questions present a significant aspect of the case and

17   they can be resolved for all members of the class in a single adjudication, there is clear

18   justification for handling the dispute on a representative rather than on an individual basis."

19   *Hanlon v Chrysler Corp*. 150 F.3d at 1022.  In other words, the predominance inquiry "focuses on

20   'the relationship between the common and individual issues.'" *Vinole v. Countrywide Home*

21   *Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

22       Plaintiff's theory of the case as to the donning and doffing claim is that employees must be

23   compensated for the time they spend putting on and taking off the uniform at work before

24   clocking in (and after clocking out) because the uniforms are mandatory.  As to the security bag

25   check claims, Plaintiff's theory is similar – that employees are required to undergo security bag

26   checks and therefore must be compensated as they are under their employer's control during that

27   time.  Plaintiff alleges this Court's determination as to the legality of Defendants' policies would

28   "produce in one stroke answers that are central to the validity of [plaintiff's] claims."  *In re*

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1   *Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.* 722 F.3d 838 (6th Cir. 2013) (finding

2   that even under *Wal-Mart*, certification was appropriate because resolution of the common

3   question of alleged defect from a common feature of the washers would advance the litigation);

4   *see also Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 800 (7th Cir. 2013) (Judge Posner

5   explaining that "[a]n issue 'central to the validity of each one of the claims' in a class action, if it

6   can be resolved 'in one stroke,' can justify class treatment.")  In other words, if this Court finds

7   that Defendants required all employees to change at work and had common policies that did not

8   compensate employees for more than a *de minimis* amount of off-the-clock changing time in a

9   manner that violates California law, then such a ruling would provide a "one stroke answer" to

10  Plaintiff's and class members' claims.  Accordingly, predominance is satisfied for settlement

11  purposes.

12              **2.      Class Action Is a Superior Mechanism**

13          Rule 23(b)(3) "requires that class resolution must be 'superior to other available methods

14  for the fair and efficient adjudication of the controversy.'"  *Hanlon v. Chrysler Corp*. 150 F.3d at

15  1023.  "This determination necessarily involves a comparative evaluation of alternative

16  mechanisms of dispute resolution."  *Id*.  Rule 23(b)(3) 's predominance and superiority

17  requirements were added "to cover cases 'in which a class action would achieve economies of

18  time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

19  without sacrificing procedural fairness or bringing about other undesirable results.'"  *Amchem*

20  *Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting FED. R. CIV. P. 23(b)(3), Adv. Comm.

21  Notes to 1966 Amendment).

22          In the instant case, the alternative methods of resolution would be individual claims of

23  some 1,495 employees, each of whom would seek only a relatively small amount in damages.

24  Assuming *arguendo* that each individual was able to find a lawyer who would accept such a small

25  individual claim, the flood of individual cases would unduly burden the judiciary.  On the other

26  hand, economies of time, effort, and expense, as well as uniformity of decision will be achieved if

27  this case is resolved through a class action settlement because it will bring finality to every class

28  member (except those who opt out), thereby disposing of most (if not all) future individual claims.

into

*See Brown v. Cameron-Brown*, 92 F.R.D. 32, 49-50 (E.D. Va. 1981) ("The advantage of the class action device has frequently been recognized in situations where it enables persons with claims of small individual rights to pool their resources to wage a fight to vindicate their rights.")  In sum, a class action is the most suitable mechanism to fairly, adequately and efficiently resolve this dispute.

## VI.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g) governs the standards and framework for appointing class counsel for a certified class and sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  FED. R. CIV. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  FED. R. CIV. P. 23(g), Advisory Committee's Note.

Plaintiff's counsel meet all of these criteria.  Plaintiff's counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiff's and Class Members' claims.  Bae Decl. ¶¶ 19 - 41.  In addition, Plaintiff's counsel have significant experience prosecuting and settling wage and hour class actions, and the lawyers assigned to this matter are well-versed in wage and hour law and in class action law and are well-qualified to represent the interests of the class.  Bae Decl. ¶¶ 54 - 57.  Both state and federal courts have repeatedly found Plaintiff's counsel to be adequate class counsel in wage and hour class actions.  Bae Decl. ¶ 57.  Accordingly, appointment of Plaintiff's counsel as Class Counsel for settlement purposes is appropriate.

/ / /

/ / /

/ / /

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

VII.    **THE PROPOSED NOTICE TO CLASS AND THE PROPOSED SETTLEMENT ADMINISTRATION SATISFY DUE PROCESS**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement." FED. R. CIV. P. 23(e)(1)(B).  The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." FED. R. CIV. P. 23(c) (2)(B).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. General Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Notice mailed to each Class Member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule 23(b)(3), the notice must inform Class Members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." FED. R. CIV. P. 23(c)(2)(B).

In the instant case, the form and the manner of dissemination of the notice packet are consistent with modern best practices set forth by the Federal Judicial Center and negotiated and agreed upon by all counsel.  The Notice will inform Class Members of the following, among other things:

1.  The nature of this action, the identity of Class Counsel, and the essential terms of the Settlement;

2.  The allocation of the Settlement fund, including the formula for calculation of settlement shares and the number of workweeks upon which each Class Member's individual share will be calculated, the requests for the Class Representative service payment and the Class Counsel attorneys' fees and costs payment, and the other payments that will be deducted from the Settlement fund;

3.  How to participate in the Settlement;

4.  How to opt out of the Settlement;

5.  How to object to the Settlement;

6.  This Court's procedures for final approval of the Settlement; and

7.  How to obtain additional information regarding this action and the Settlement.

-23-

**AEQUITAS LEGAL GROUP**
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1    **Ex. A** to Bae Decl. (Joint Stip., **Exs. 1 & 2**).

2        The Notice is written in plain English and is organized and formatted so as to be as clear as

3    possible.  The Notice encourages Class Members to contact the Settlement Administrator with any

4    questions, and provides Class Counsel's and the Settlement Administrator's telephone, mail,

5    email, and website contact information.  Thus, the notice standard is satisfied.

6        Plaintiff's counsel and Defendants' counsel worked together to draft the proposed Notice

7    so that it fairly and neutrally apprises the Class Members of their rights and remedies in this action.

8    The parties' proposal to provide notice of the settlement to Class Members entails mailing the

9    Class Notice and Opt-Out Form to all known and reasonably ascertainable Class Members as

10   follows.

11       Within seven (7) court days of Preliminary Approval of the Settlement, Defendants shall

12   provide the Settlement Administrator with the names, last-known residence mailing address and

13   last-known telephone number, social security number, and the respective Individual Workweeks

14   that each Class Member worked during the Class Period in a readable MS Excel spreadsheet

15   (collectively "Class List and Data").  Joint Stip. § C.4.

16       Within ten (10) court days after receipt of the Class List and Data, the Settlement

17   Administrator shall mail the Notice Packet to the Class Members via first-class regular U.S. mail.

18   Prior to mailing, the Settlement Administrator will perform a search based on the National Change

19   of Address Database information to update and correct for any known or identifiable address

20   changes.  It will be conclusively presumed that if an envelope containing the Class Notice has not

21   been returned before the end of the 45-day opt-out period that the Class Member received the

22   Notice.  If a new address is obtained by a way of a returned Notice Packet, then the Settlement

23   Administrator shall promptly forward the original Notice Packet to the updated address via first-

24   class regular U.S. mail indicating on the original Notice Packet the date of such re-mailing.

25   Where a Notice Packet is returned as undeliverable, without a forwarding address, the Settlement

26   Administrator will perform a computer/SSN and "skiptrace" search to obtain an updated address

27   within three (3) court days of receiving the notice from the U.S. Post Office.  If a new address is

28   obtained by way of a returned Notice Packet or skiptrace, then the Settlement Administrator shall

AEQUITAS LEGAL GROUP
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106

1  promptly forward the original Notice Packet (no later than 3 court days after receiving the

2  undeliverable notice or obtaining the skiptrace results) to the new address via first-class regular

3  U.S mail.  Those Class Members who were re-mailed the Notice Packet will be given an

4  additional 14 calendar days after the 45-day deadline.  *Id*.

5          Not more than 30 days nor fewer than 25 days after mailing of the original Notice Packet,

6  the Settlement Administrator shall mail one reminder postcard which shall include the estimated

7  Individual Settlement Payment as well as contact information for the Parties' Counsel and the

8  Settlement Administrator, to all Class Members who have not yet submitted an Opt-Out Form, to

9  remind them of the deadline.  Joint Stip. § C.6.

10         In sum, the proposed notice to the Class and the proposed settlement administration

11 process satisfy due process and thus should be approved for dissemination.

12 **VIII.   PROPOSED IMPLEMENTATION SCHEDULE**

13         Plaintiff recommends the following implementation schedule following an Order granting

14 preliminary approval of the proposed class action settlement:

| a. | Deadline for Defendants to Submit Class List and Data to Settlement Administrator | **Seven (7) court days after the Order Granting Preliminary Approval** |
|---|---|---|
| b. | Deadline for Settlement Administrator to Mail the Notice Packet to Class Members | **Ten (10) court days after Defendants provide the Settlement Administrator with the Class List and Data** |
| c. | Deadline for Settlement Administrator to Mail Reminder Post-Cards to Class Members | **Not more than thirty (30) calendar days (nor fewer than twenty-five (25) days) after mailing of Notice Packets to Class Members** |
| d. | Deadline for Class Members to Submit Opt-Out Forms or Objections to Settlement | **Forty-five (45) calendar days after mailing of Notice Packets to Class Members** |
| e. | Deadline for Class Counsel to file (1) Motion for Final Approval of Class Action Settlement and (2) Motion for Award of Class Representative Enhancement Award, Claims | **February 10, 2017** |

-25-

| | Administrator's Expenses and Attorneys' Fees and Costs | |
|---|---|---|
| f. | Hearing on:<br><br>• Motion for Final Approval of Class Action Settlement;<br><br>• Motion for Award of Class Representative Enhancement Award, Settlement Administrator's Expenses and Attorneys' Fees and Costs | **March 20, 2017 (Monday) at 10:00 a.m.** |

## IX.    CONCLUSION

The parties have successfully negotiated a settlement of claims that almost certainly would never have been brought, much less successfully so, but for the use of a class action as a procedural device.  The efficient and fair resolution of this case was made possible by the combined efforts of a dedicated and informed Class Representative and experienced Plaintiff's counsel and Defendants' counsel, who were able to realistically assess the costs and risks of continued protracted litigation.  Accordingly, Plaintiff respectfully requests this Court to grant preliminary approval of the proposed settlement, certify the Settlement Class, appoint Plaintiff as the Class Representative, appoint Plaintiff's counsel as Class Counsel, appoint the Settlement Administrator, approve the notice packet to the Class, and set the hearing date for the Motion for Final Approval.

Dated:  October 18, 2016

Respectfully Submitted,

AEQUITAS LEGAL GROUP

/s/  *Ronald H. Bae*
By: _____
RONALD H. BAE
OLIVIA D. SCHARRER
Attorneys for Plaintiff NAMARAJ KHATRI

A E Q U I T A S   L E G A L   G R O U P
A Professional Law Corporation
1156 E. Green Street, Suite 200
Pasadena, California 91106